**CITY OF GILMER et al. v. MOYER et al.**

No. 5949.

Court of Civil Appeals of Texas. Texarkana.
June 25, 1942.

Rehearing Denied July 16, 1944.

Otis T. Dunagan, of Gilmer, and Truman Warren, of Tyler, for plaintiffs.

Florence, Florence & Meredith, of Gilmer, for defendants.

JOHNSON, Chief Justice.

This is a suit for injunction brought by appellants, the City of Gilmer, R. H. Lascinger and wife, Georgia Lascinger, and Ina Mae Barnwell Warren and husband, J. D. Warren, against appellees, H. W. Moyer, owner of the West 120 ft. of Lot 12 in Block 40 of the City of Gilmer, and W. C. Fowler, building contractor for H. W. Moyer, seeking to restrain said Moyer and Fowler from erecting a brick building across the East 20 ft. of the West 120 ft. of said Lot 12. Appellants alleged that they had acquired an easement or right of way across the East 20 ft. of the West 120 ft. of said Lot 12 by prescription. Appellees, in addition to a general denial and certain special pleas, filed a cross plea asking for a mandatory injunction requiring the City of Gilmer to issue to appellees a permit to erect a brick building on the 20 ft. in controversy, that is, to extend the building now covering the West 100 ft. so as to cover the full 120 ft.

Trial of the cause before the court without a jury resulted in judgment denying the injunction prayed for by appellants and also refusing the mandatory injunction asked by appellees. Both appellants and appellees excepted to the judgment and gave notice of appeal. The appeal was perfected by appellants. No findings of fact and conclusions of law were requested of the trial court and none appear in the record.

The two points asserted by appellants raise the contention that the testimony conclusively, or as a matter of law, shows that appellants had acquired an easement or right of way by prescription across the East 20 ft. of the West 120 ft. of Lot 12

in Block 40. After a careful examination of the record we are unable to agree with the contention. A view of the following map, not drawn to scale, will assist in better understanding the facts:

buildings. The East 20 ft. of the West 120 ft. of Lot 12 is the land in controversy and over which appellants claim to have acquired an easement by prescription. The West 120 ft. of Lots 9 and 10 appear to

Block 40 in the City of Gilmer is 287.30 ft. square. No alley was platted or dedicated through it. Lots 5 to 12, inclusive, comprise the West half of said block, each lot being 143.65 ft. long, East and West, and face the public square to the West. Lot 12 is in the Southwest corner of the block. At an early date, not clearly shown, the owner of lots 12 to 8, inclusive, sold off the West 120 ft., thus retaining the East 23.65 ft. of said lots, which 23.65 ft. was enclosed. In 1902 E. H. Bussey acquired the West 120 ft. of Lots 11 and 12, and shortly thereafter erected brick business buildings thereon, covering the West 100 ft. of said lots, thus leaving the East 20 ft. of the West 120 ft. not covered by the

have been subdivided into Lots 9B, 9C, 10B and 10. But such subdivision is not shown on the map introduced in evidence. Lots 9B, 9C and 10B are owned by appellant Ina Mae Barnwell Warren. Lot 10 is owned by one Futrell who was not made a party to the suit. Lot 11 is owned by appellants R. H. Lascinger and wife, Georgia Lascinger. Within a few years after the erection of the buildings on the West 100 ft. of Lots 11 and 12, like buildings were erected on the West 100 ft. of Lots 9B, 9C, 10B and 10, thus leaving the East 20 ft. of the West 120 ft. of said lots not covered by the buildings. As long as this condition remained, a person desiring to enter the back of said buildings would cross over

Lot 8 and lots to the North thereof, or cross over the East 20 of the West 120 ft. of Lot 12. About 1925, the United States Post Office was erected on Lots 5 to 7, inclusive, occupying the full 143.65 ft. of said lots; and in 1932 Boyce Hogg, owner, erected a brick building covering the West 120 ft. of Lot 8, which prevented crossing over said lots in going to the back of the buildings on Lots 9B, 9C, 10B, 10 and 11. Thereafterwards persons desiring to enter the !back of the buildings on said inside lots, 9B, 9C, 10B, 10 and 11 crossed over the 20 ft. of Lot 12 now in controversy. In June 1941, H. W. Moyer, owner of the West 120 ft. of Lot 12, applied through his building contractor, W. C. Fowler, to the City of Gilmer for a permit to erect a building on the East 20 ft. of the West 120 ft. of Lot 12, that is, to extend the building now located on said lot from 100 ft. to 120 ft. Such extension of said building would prevent entrance to the back of the buildings on said inside lots, except through the front doors of said buildings. The application for said permit was protested by appellants, Lascingers and Warrens, and the permit was denied, whereupon this suit was filed.

The testimony bearing immediately upon the issue of prescription shows in substance: That since the erection of the buildings on said inside lots lying North of Lot 12, and more especially since the closing of Lot 8 in 1932, the owners of said inside lots, in hauling merchandise to and trash and garbage from the back of said buildings would cross over the 20 ft. of Lot 12 now in controversy; that such use of said 20 ft. of Lot 12 was with the acquiescence and without any objection on the part of Moyer and his predecessors in title. In this connection, Mrs. Cassie Driggers, who with her husband, B. D. Driggers, now deceased, owned the West 120 ft. of Lot 12 from about 1902 until she sold same to Moyer in 1939, testified:

"Q. The tenants that your husband had and that you had after you acquired title in your name, did they, or not, use the 20 feet in connection with the use of their store building? A. In transporting things back and forth, and others did the same.

"Q. You knew those to the north did the same? A. Yes.

"Q. That was all right with you? A. Yes.

"Q. You raised no objections? A. No.

"Q. And consented to it? A. Yes.

"Q. Did you or not agree for other people north of you to come across this 20 feet? A. I did not object."

No objection was made against the owners of said inside lots laying their water and sewerage service lines underneath the ground across the 20 ft. of Lot 12 in controversy, about 1932; nor to the Gas Company, in 1929, laying its line serving the buildings on said inside lots to the North of Lot 12. On the other hand, it is shown that continuously since the erection in 1902 of the building on the West 100 ft. of Lot 12 appellee Moyer and his predecessors in title to the full 120 ft. have used the 20 ft. now in controversy for loading merchandise through the back door of the building located upon said lot, and for other necessary purposes in connection with the business being carried on in the building; and in recent years erected and operated a brick barbecue pit or stand for a short time on said 20 ft. in connection with a grocery store in the building; that Moyer and his predecessors in title have always paid the taxes regularly on said 20 ft. From the testimony it appears that the City of Gilmer and its officials do not now claim and have never claimed that an alley or right of way has ever been established over said 20 ft. of Lot 12, by dedication, prescription or otherwise. On the other hand, the City as late as 1937 had a survey and ownership map made which it accepted and has since used, of all property within the corporate limits, for purposes of assessing and collecting taxes and other general purposes. The map shows Mrs. C. J. Driggers (Moyer's predecessor in title) to be the owner of the West 120 ft. of Lot 12, which includes the 20 ft. in controversy. The City has assessed and collected taxes on the 20 ft. in controversy against Moyer and his predecessors in title and issued receipts therefor each and every year; that the City has issued permits for other buildings on other lots in the city under like circumstances as here involved, and particularly on the North end of the West half of Block 40, being Lot 8 and the lots north thereof. That the City recognized Moyer's predecessor in title as being the owner of the 20 ft. in controversy in issuing a building permit for the erection of the above-mentioned barbecue pit or stand. That appellants Lascingers purchased their proper-

ty, Lot 11, in 1926, and that their deed calls for 120 ft., East and West; and that they have recognized the title of Mrs. C. J. Driggers to the particular 20 ft. of Lot 12 in controversy by offering to buy same from her prior to the time she sold to Moyer in 1939; that appellant Ina Mae Barnwell Warren inherited Lots 9B, 9C and 10B from R. C. Barnwell, and R. C. Barnwell purchased a part of said lots in 1923 and the remainder in 1936 by deeds calling for each of said lots to be 120 ft. long.

The law here involved is aptly stated in Ladies Benev. Soc. of Beaumont v. Magnolia Cemetery Co., Tex.Com.App., 288 S.W. 812, 815, in the following language:

"In order to establish a right of way by prescription, it is necessary to show that an uninterrupted user of the way has been made by the public, under an adverse claim of right, for the statutory period of limitation. This adverse claim of right may be proved by circumstantial evidence, sufficient to sustain the conclusion, but it must, nevertheless, be proved in some way by legal evidence, else the alleged prescriptive right fails. The use of lands of another by the public as a roadway, with the acquiescence of the landowner, will not ripen into a prescriptive right, no matter what period of time such use may continue, unless the evidence shows, circumstantially or otherwise, that the use was by claim of right adverse to the landowner, of which adverse claim the latter has notice." (Citing authorities.)

Other than crossing over Lot 12 in hauling merchandise to and removing trash and garbage from the back of their buildings, the owners of said inside lots appear not to have ever done or said anything tending to show that such use was by claim of right adverse to the owners of Lot 12. Such use made by appellants was with the acquiscence of the landowner, but it is a serious question as to whether the particular character of use made by appellants was alone sufficient to show that such use was by a claim of right adverse to the landowner, and as to whether the same was sufficient to give the latter notice of such adverse claim. At most the testimony in this respect no more than raised an issue of fact, which was concluded against appellants by the trial court as trier of the facts. Davis v. Meckel, Tex. Civ.App., 57 S.W.2d 622.

Appellees have cross assigned error to that part of the judgment denying them the mandatory injunction requiring the City of Gilmer to issue the building permit as applied for by appellees. It appears that the application for the permit is in due form and meets all requirements of city ordinances, and that the only reason it was rejected was on account of the protest of the owners of said inside lots claiming the alleged easement. Since that issue is decided adversely to appellants, appellees are entitled to the mandatory injunction requiring issuance of the permit.

The judgment of the trial court denying the injunction prayed for by appellants will be affirmed; and that part of the judgment of the trial court denying the injunction prayed for by appellees will be reversed with instructions that said mandatory injunction be granted as prayed for.

Affirmed in part, and reversed and remanded with instructions in part.